*In re* THACKER ESTATE

Docket No. 67755. Submitted November 8, 1983, at Grand Rapids.—
Decided May 17, 1984.

Pacesetter Bank & Trust-Grand Traverse was appointed executor
of the estate of Fred R. Thacker, M.D., deceased. The bank
retained counsel to represent the estate in the action brought
by the widow, who elected against the will in contravention of
an antenuptial agreement. After the widow's action was settled
the annual accounts were filed and the Benzie County Probate
Court was petitioned to allow them. The accounts were allowed
subject to objections by the decedent's daughters, who were the
primary takers under the will. The objections were made to the
bank's fee, to retained counsel's fee, and to payments made to
the bank and to counsel prior to approval by the court. Prior to
decision on these matters, the bank moved to disqualify Pro-
bate Judge Kris A. Van Thielen. The motion was denied and,
after hearing before Judge Boyd C. Baird, sitting by assign-
ment, was again denied. The probate court, Judge Van Thielen,
thereafter granted the bank compensation substantially below
what it had requested. The court also held that the bank and
the retained counsel were jointly and severally liable for $16,-
833 paid to counsel beyond what the court held to be a
reasonable fee and also assessed a surcharge against the bank
for making payments without judicial approval. The bank
appealed. *Held:*

1. The motion to disqualify the judge was based on the

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Costs § 78.

Amount of attorneys' compensation in proceedings involving wills
and administration of decedents' estates. 58 ALR3d 317.

[2] 31 Am Jur 2d, Executors and Administrators § 486 *et seq.*

[3, 5, 6] 31 Am Jur 2d, Executors and Administrators § 169.

Liability of executor or administrator, or his bond, for loss caused
to estate by act or default of his agent or attorney. 28 ALR3d
1191.

Personal liability of executor or administrator for fees of attorney
employed by him for the benefit of the estate. 13 ALR3d 518.

[4, 5] 31 Am Jur 2d, Executors and Administrators §§ 216-218.

judge's admission that, in determining a reasonable fee for legal services, he had considered information not presented in open court regarding attorney fees. A court has the broadest discretion in setting an attorney fee in a probate matter and to evaluate the worth of the services rendered. The judge's gathering of additional knowledge and information, which was disclosed to the bank, was not error. There was no showing of any bias or other reason for disqualification.

2. The basis upon which the court set the bank's hourly rate of compensation is not clear from the record. The confusion arises because during the time period in question the Revised Probate Code changed the method by which a fiduciary's fees are to be calculated. The case is remanded for a fuller explanation of the method used or for a recalculation.

3. A portion of the bank's claim was based upon its overhead. The court did not indicate whether this item was considered. If it was not allowed, the court should have explained its actions in this regard.

4. The court did not abuse its discretion in refusing to order additional compensation for claimed extraordinary services.

5. Neither the bank nor the attorney were entitled to receive compensation prior to authorization by the probate court. The court did not err in finding that these payments detrimentally affected the estate and in assessing a surcharge.

6. The court did not abuse its discretion in finding that the attorney fee paid was excessive and that the bank was liable to the estate for the excess paid.

Affirmed in part and remanded.

1. COURTS — EVIDENCE — PROBATE — ATTORNEY FEES.

Generally, it is not proper for a trial court to obtain evidence outside of the presence of the parties; however, a trial court in a probate matter has the broadest discretion to set an attorney fee in the matter and to evaluate the worth of the services rendered in light of the court's experience and knowledge of such matters.

2. EXECUTORS AND ADMINISTRATORS — FIDUCIARY — APPROVAL OF FEES.

A fiduciary of an estate may take its fees at intervals "as approved by the court" without judicial action after the court initially determines the intervals at which the fiduciary shall be paid; however, judicial approval is required before the fiduciary may take its initial payment (MCL 700.541; MSA 27.5541).

3. EXECUTORS AND ADMINISTRATORS — ATTORNEY FEES — APPROVAL OF FEES.

Counsel retained by the fiduciary of an estate to represent the estate has no right to compensation for his services until the court approves his request (PCR 908).

4. EXECUTORS AND ADMINISTRATORS — FIDUCIARY.

A person acting as a fiduciary may be charged with knowledge of the law.

5. EXECUTORS AND ADMINISTRATORS — HARM TO ESTATE — FIDUCIARY'S NEGLIGENCE.

A personal representative who through negligence causes harm to an estate may be deprived of all or part of the compensation the representative would otherwise be entitled to and may properly be surcharged for any detriment occurring to the estate because of the early payment of fiduciary or attorney fees.

6. EXECUTORS AND ADMINISTRATORS — ESTATES — ATTORNEY FEES — BURDEN OF PROOF.

The burden is on a fiduciary to show that the services of an attorney were necessary and that the charges were reasonable where the fiduciary paid the attorney's fees prior to authorization by the court.

*Running, Wise & Wilson* (by *William L. Wise*), for appellant.

*McKay & McKay* (by *Joan Swartz McKay*), for appellees.

Before: ALLEN, P.J., and R. M. MAHER and R. H. BELL,* JJ.

PER CURIAM. This appeal arises from an order entered in the Benzie County Probate Court which reduced the fiduciary's fees and imposed a surcharge on the fiduciary. The fiduciary, Pacesetter Bank & Trust, appeals as of right. The bank also appeals the denial of its motion to disqualify Ben-

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

zie County Probate Court Judge Kris A. Van Thielen.

On February 22, 1978, Dr. Fred R. Thacker died, leaving a will which appointed as executor Pacesetter Bank & Trust (at that time called Traverse City State Bank; hereinafter appellant). Thacker's estate included assets of $900,000 in stock and totalled $1,300,000. Administration of the estate was complicated by the widow's decision to elect against the will in contravention of an antenuptial agreement she had signed, and by inclusion in the estate of real property situated in Nebraska and a large block of thinly traded stock.

Appellant retained counsel, John Daugherty, to handle the legal aspects of the estate, as was its custom. However, because Daugherty drew and witnessed Thacker's will and was likely to be called as a witness in the widow's suit, appellant retained special counsel, William Wise, to handle the estate's defense against this suit, which was ultimately settled on May 3, 1979, by payment of a lump sum.

Nebraska attorneys were retained to handle the sale of the Nebraska real estate. Additionally, an accounting firm was hired to handle the payment of the estate's state and federal taxes.

During the pendency of the widow's suit, as a tactical matter, no annual accounts were filed or sent to the appellees (decedent's three daughters who were the primary takers under the will). These accounts were eventually filed and mailed to the appellees in January, 1980, and the probate court was petitioned to allow them on February 22, 1980. The accounts were allowed subject to appellees' objections to the appellant's fee, to Daugherty's fee, and to payments made to appellant and Daugherty before approval by the court.

A hearing was held on February 24, 1982, to resolve these disputes. Appellant presented two of its officers to establish that its fees were reasonable. Daugherty testified that his fee was reasonable, as did a local attorney, John Huft. The probate court requested that the parties brief the issue.

Prior to submission of its brief, appellant moved to disqualify Judge Van Thielen. Judge Van Thielen heard and denied this motion on May 19, 1982. Pursuant to GCR 1963, 912.3, appellant requested that the motion be heard by another judge. On September 13, 1982, Judge Boyd C. Baird, Otsego County Probate Judge, sitting by assignment, also denied the motion.

In an order filed October 15, 1982, the probate court granted appellant compensation of $42,000, $21,089 below what it had requested. Additionally, the court held that appellant and Daugherty were jointly and severally liable for $16,833 paid to Daugherty beyond what the court held to be a reasonable fee. The court also assessed a surcharge against appellant for payments made without judicial approval.

Appellant contends that its motion to disqualify should have been granted because the probate court admitted that, in determining a reasonable fee for the legal services, it had considered information not presented in open court, namely, information regarding attorney fees derived from Michigan State Bar Association publications, other judges, and the local bar. The court felt this procedure was justified through judicial notice and since, under PCR 908, the court has summary jurisdiction over officers of the court, and because it is the duty of the probate court to protect the parties interested in an estate from unfair fees.

Case law has demonstrated some aversion to a trial court's obtaining evidence outside of the presence of the parties. The basis for this position is that the court may obtian information subject to interpretation and thus cause a party's case to be prejudiced. See, *e.g., Valentine v Malone,* 269 Mich 619, 628; 257 NW 900 (1934); *McCamman v Davis,* 162 Mich 435; 127 NW 329 (1910). However, this principle does not apply to the setting of an attorney fee in a probate matter in which the court has the broadest discretion to evaluate the worth of the services rendered in light of its experience and knowledge of such matters. Thus, in *Becht v Miller,* 279 Mich 629, 640-641; 273 NW 294 (1937), the Supreme Court relied on its collective experience in reducing the fees awarded to an estate attorney, specifically holding that it was not bound by the expert opinion of attorneys who indicated that the reasonable value of the legal services were vastly in excess of what the Supreme Court ultimately allowed.

We believe it would be incongruous to encourage judges to use personal knowledge in setting an acceptable attorney fee, but to hold that a judge cannot increase his knowledge. Accordingly, we do not believe the trial court's gathering of additional information, which was disclosed to appellant, was error. Appellant failed to show that the judge was personally biased for or against a party, nor did appellant establish any other reason which required disqualification.

Appellant next contends that the probate court erred in evaluating the appropriate compensation which it should receive in administering the estate. Appellant requested compensation of $63,089, based upon three factors. First, appellant sought $47,131 for the time spent on the estate by admin-

istrative officers, claimed to be 673.3 hours at a rate of $70 per hour. Second, appellant calculated overhead as "reasonable expenses" under MCL 700.541; MSA 27.5541 by using a formula it generally employed to determine appellant's ordinary trustee's fee. Under this formula, appellant takes a percentage of the amount of the assets remaining to be managed on a quarterly basis. Thus, as the amount of assets diminishes, the cost to the estate for administration declines. This overhead was calculated to be $9,458. Third, appellant claimed $6,500 under MCL 700.541; MSA 27.5541 for extraordinary services rendered. This figure was derived by taking 0.5 percent of the amount of the initial domiciliary estate.

The trial court awarded compensation of $42,-000. In arriving at this figure, the court made three pertinent findings: (1) appellant assumed no unusual degree of responsibility, (2) there was great duplication of time between appellant and the professionals hired by it to assist in administration of the estate, and (3) the appellant's hourly rate for estate administration was $50 per hour as reflected by appellant's average hourly charge to the estate through October 31, 1979. As set forth below, we believe that a remand is necessary for a redetermination of the compensation due to appellant.

The basis upon which the probate court determined that appellant's rate for estate administration was $50 per hour is unclear. Apparently, however, it accepted the position of the appellees that appellant would pay itself what it thought its time was worth. Accordingly, based upon the number of hours appellant claimed to have expended on estate administration through October 31, 1979, and dividing that number into the fees claimed by

appellant in the first two annual accounts which covered the same period, the court seemingly determined that appellant's hourly rate should be set at $50.

If, indeed, this is the method the probate court used in determining the $50 hourly rate of compensation, the court adopted an unsound method of determining just compensation. According to the testimony presented, the number of administrative hours expended on the estate was calculated after the fact using correspondence, court documents, attorney records, and appointment calendars. This is because under § 33 of the old probate code, MCL 704.33; MSA 27.3178(284), appellant's compensation as a fiduciary was not based upon the actual time spent on the estate administration but, rather, was set by a statutory formula. Consequently, contemporaneous time figures were not kept. However, after July 1, 1979, when the Revised Probate Code went into effect, the statutory fee was eliminated, and the time actually spent on estate administration became crucial in determining a fiduciary's compensation. It appears that appellant's payments through October 31, 1979, were all made based upon the provisions for statutory compensation under the old code. Therefore, rather than paying itself an hourly rate, appellant seemingly was compensating itself by payment of the statutory fee. Given this fact, it does not follow that dividing the number of hours spent on the estate administration into the total compensation received by appellant through October 31, 1979, would result in an hourly rate which accurately reflected what appellant believed its administrative officers' time was worth or a figure which constitutes reasonable compensation. If, indeed, the method outlined

above is how the probate court determined the $50 hourly rate, on remand it must not use this method absent record evidence that appellant's fees through October 31, 1979, had been set on an hourly basis. In any case, on remand, the probate court shall explain in some detail the basis upon which the appellant's compensation was determined or, as the case may be, redetermined on remand.

The second factor appellant identified in setting its request for compensation was its overhead. No part of the probate court's opinion or order directly addressed the propriety of awarding compensation for this item. The statute states that a fiduciary "*shall* be allowed the amount of his or her reasonable expenses incurred in the administration of the estate" (emphasis added). MCL 700.541; MSA 27.5541. Thus, if the lower court did not allow overhead or some portion of the claimed overhead charge, it should have explained its actions in this regard. In fact, it appears that the court at least partially allowed this claim. At $50 per hour, $42,000 would represent 840 hours of time spent working on the estate. Appellant was only claiming 673.3 hours, and the court stated that not all of these hours were compensable. Subtracting the sum claimed by appellant for overhead would leave 650 compensated hours. On remand, the probate court shall specifically indicate the compensation awarded for overhead and the basis upon which this compensation was determined if it differs from the overhead claimed by appellant.

Appellant's third factor for compensation was the increased liability, responsibility, and extraordinary services involved in the administration of this estate. Appellant listed eight factors justifying

additional compensation. The probate court discounted most of these factors because appellant had not assumed any unusual degree of responsibility or encountered any extraordinary difficulty in handling the estate. It based this finding on the fact that certified public accountants handled most of the tax work, attorney Wise handled the litigation, attorney Daugherty handled the routine probate matters, and the ancillary estate was handled by an out-of-state bank. Only in respect to stock management did the court find that appellant assumed substantial responsibility. However, the management of stocks was among the ordinary responsibilities of appellant.

Appellees argue that appellant's handling of the stock was a detriment to the estate. They base this argument on the fact that the estate's major stock holding, U.S. Sugar, more than doubled in value after appellant disposed of it. Appellees contend that if appellant had properly managed the U.S. Sugar stock, it would have been held long enough to reap this reward. The probate court does not appear to have accepted this theory. Rather, it appears to have held that the services of appellant were beneficial to the estate—the stock was sold at a gain of some $45,000—but that the failure to reap the added gains of the U.S. Sugar stock showed there was not *special* benefit to the estate. This conclusion is supported by existing precedent. See, *e.g., In re Eddy Estate,* 354 Mich 334, 347-348; 92 NW2d 458 (1958). The probate court did not abuse its discretion in refusing to order additional compensation for extraordinary services.

Appellant also contends that the probate court erred in granting a surcharge on payments made to itself and to attorney Daugherty without prior judicial approval. Appellant contends that this was

improper because the Revised Probate Code does not require prior judicial approval of payments, and, in any case, the estate was not damaged since the payments made prior to court approval merely covered a portion of the fees which the court ultimately held appellant was entitled to receive.

Section 541 of the Revised Probate Code, MCL 700.541; MSA 27.5541, provides that a fiduciary may take its fees at intervals "as approved by the court". While this provision is broad enough to allow a fiduciary to take its fees without additional judicial action after the court initially determines the intervals at which the fiduciary shall be paid, the plain language of the provision requires judicial approval before the fiduciary may take its initial payment. Thus, appellant erred in paying itself without court approval.

It is not as readily apparent whether the fiduciary may pay an attorney's fees prior to court approval. The statute merely states that counsel may be retained without court approval and shall receive reasonable compensation for his services. MCL 700.543; MSA 27.5543. However, PCR 707.1(d)(2) requires approval of attorney compensation to be sought pursuant to PCR 908. PCR 908.3 states that an attorney is to receive reasonable compensation in an amount approved by the court. The attorney therefore has no right to compensation until the court approves his request. Consequently, the early payment to the attorney was also error.

When a personal representative through its negligence causes harm to an estate, the personal representative may be deprived of all or part of the compensation it would otherwise be entitled to. *In re Baldwin's Estate,* 311 Mich 288, 307; 18 NW2d 827 (1945); *In re Tolfree Estate,* 347 Mich

272, 281; 79 NW2d 629 (1956). One acting as a fiduciary may properly be charged with knowledge of the law. *In re Tolfree Estate, supra,* p 283. Therefore, appellant could properly be surcharged for any detriment occurring to the estate because of the early payment of these fees.

In *In re Tolfree Estate, supra,* pp 289-290, the Court held that the fiduciary could be surcharged interest on funds in its hands which, in the exercise of reasonable diligence, could have been invested in income producing securities. In the present case, testimony disclosed that funds in the estate were being invested at 5-1/4 percent to 11 percent. Therefore, there was no abuse of the probate court's discretion in finding that the money paid by appellant to itself and attorney Daugherty detrimentally affected the estate as these funds could have been earning interest. The probate court consequently did not abuse its discretion in ordering the surcharge.

Appellant lastly contends that the probate court erred in holding it jointly and severally liable for excessive payments made to attorney Daugherty. Appellant argues that the attorney services did not benefit itself and, thus, it should not be responsible for the over payments.

The attorney's fees were paid before authorization by the court. Therefore, the burden was on appellant to satisfy the court that the services were necessary and the charges were reasonable. *In re Grover's Estate,* 233 Mich 467, 476; 206 NW 988 (1926). The probate court based the reduction of the attorney fees on two factors.

First, the probate court found that a reasonable attorney's fee for the work performed was $60 per hour. The court based this finding on testimony that local fees for ordinary services ran from $50-

$70 per hour and that the attorney performed no unusual services nor incurred any inordinate responsibility.

Second, the court held that the estate should be chargeable for 300 hours of legal work as shown on the attorney's statement of activity. This discounted the attorney's claim for hours that "slipped through the seams".

There was no abuse of discretion as to either finding of the probate court. Therefore, appellant has failed to display that the fee paid out was reasonable, and it is liable to the estate for the excess paid.

Affirmed in part and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.